## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph Paul Baker,<br><br>　　　　　Plaintiff,<br><br><br>vs.<br><br><br><br>**The City of Woodbury**, **John Wallgren**, individually and in his official capacity, **Chris Klein**, individually and in his official capacity and **J. B. Guiton**, individually and in his official capacity,<br><br>　　　　　Defendants. | CASE NO:<br><br><br><br><br><br>__COMPLAINT AND JURY DEMAND__ |

**TO:   Defendants above-named and their respective attorneys.  This is an action for money damages brought against Defendants pursuant to 42 U.S.C. §1983 for retaliating against Plaintiff Joseph Paul Baker because he engaged in free speech protected by the First Amendment of the United States Constitution. Plaintiff Joseph Paul Baker also brings Minn. Stat. § 181.932, Minnesota Whistleblower Act claim as a supplemental state law action pursuant to 28 USC §1367.**

## JURISDICTIONAL STATEMENT

1.　　The acts complained of all occurred in this judicial district and this is an action for

　　　damages brought pursuant to 42 U.S.C. §§1983 and 42 U.S.C. §§1988 for the

violation of Plaintiff Joseph Baker's rights guaranteed by the First Amendment of the United States Constitution, U. S. Const. amend. I.

2.    Plaintiff Joseph Paul Baker (hereinafter "Plaintiff Baker" or "Plaintiff") additionally brings a State of Minnesota statutory whistleblower claim pursuant to Minn. Stat. §181.932.

3.    This Court has jurisdiction to adjudicate Plaintiff Baker's federal question claim subject to 28 U.S.C. §1331 and also exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. §1367.

## PARTIES

4.    Plaintiff Baker lives in the City of Inver Grove Heights and is a resident of the State of Minnesota.  Between June 2018 and December 2019, Plaintiff Baker was employed by the City of Woodbury in its Emergency Medical Services Division (hereinafter "EMS" or "EMS Division").

5.    Defendant City of Woodbury is a city in Washington County, Minnesota, and part of the Minneapolis–Saint Paul metropolitan areas.

6.    Defendant John Wallgren (hereinafter "Defendant Wallgren" or "Chief Wallgren") is employed by the City of Woodbury and he is an Assistant Public Safety Director and Fire Chief in the EMS Division.

7.    Defendant Chris Klein (hereinafter "Defendant Klein" or "Defendant Chris Klein") is an employee of the City of Woodbury and he is a fire and EMS commander.

8.     Defendant J. B. Guiton (hereinafter "Defendant J. B Guiton" or "Defendant Guiton") is employed by the City of Woodbury and he is an EMS commander.

## GENERAL BACKGROUND

9.     There has been public outcry for many years in the Minneapolis-St. Paul metropolitan areas specifically, and the country more generally about paramedics who have injected unwilling Americans with Ketamine. Police officers have compelled paramedics to administer the sedative to many unwilling Americans. Forced administrations of Ketamine by paramedics at the urging of police officers become perfect crimes when paramedics refuse to tell the truth about who's urging they administer the sedatives.

10.    Plaintiff Baker's exercised his free speech rights under the United States Constitution during his employment with the City of Woodbury's EMS, and exposed the truth.  The unlawful and improper administration of Ketamine by paramedics at the behests of police officers will no longer remain a perfect crime.

11.    From April 2019 through November 2019, as a citizen and a paramedic, Plaintiff Baker was obligated to sound the whistle pursuant to Minnesota Statute 144E.305, subdivision 1 and 2; 144E.27, subdivision 5; and 144E.28, subdivision 5 about health and safety matters in the City of Woodbury EMS Division.  Defendants above-referenced, retaliated against Plaintiff Baker because as a citizen, he

3

exercised his free speech rights as authorized under federal law and encouraged under state law.

12.     Upon information and belief, the City of Woodbury police officers and firefighters who receive training as paramedics receive additional 7 percent increase in their pay.  However, in 2018 and 2019, many police officers and firefighters failed to attend their EMS certification trainings and their superiors, as well as the City of Woodbury, ignored the officers' misleading attendance record in violation of Minnesota Statute 144E.305, subdivision 1 and 2; 144E.27, subdivision 5; and 144E.28, subdivision 5.

13.     During Plaintiff Baker's employment with the City of Woodbury EMS, when members of the City of Woodbury public safety leadership signed off that officers and firefighters attended recertification trainings without their requisite attendance, the practice in the City of Woodbury was referred as the boss using his "magic pen."  Plaintiff believed that the officers, firefighters and paramedics involved and their superiors' conduct was unlawful and in violation of the law, including Minnesota Statute 144E.305, subdivision 1 and 2; 144E.27, subdivision 5, or 144E.28, subdivision 5.

14.     The above-referenced practice was alarming to Plaintiff Baker.  As a citizen, Plaintiff Baker was concerned about the integrity of the City of Woodbury EMS paramedic licenses, including his own license.  He was also concerned about public safety risks of uncertified EMS officers providing medical care without

4

their requisite continuing education training, and the harm they could cause as a result.

15. Though Plaintiff Baker was an employee of the City of Woodbury EMS Division, he was personally shocked by the unlawful practices condoned by the City of Woodbury and its leadership team.  These situations compelled him to report the matter to the chairman of the State's EMS governing board.  In reporting wrongdoings in the City of Woodbury EMS Division, Plaintiff Baker was also concerned that if the practices were not addressed, Plaintiff Baker's own license as a paramedic could be in jeopardy.

16. The City of Woodbury and its EMS leadership personnel retaliated against Plaintiff Baker because he complained about irregularities with paramedic certification training records.  Plaintiff reported the errors to his leadership, as well as the State regulatory board as required by Minnesota Statute 144E.305, subdivision 1 and 2; 144E.27, subdivision 5, or 144E.28, subdivision 5.

17. Plaintiff Baker notified the City of Woodbury and it agents about the errors.  For example, by multiple correspondence, Plaintiff Baker notified the City of Woodbury's Fire Chief Wallgren, as well as the assistant director of public safety. In addition, Plaintiff Baker made the City of Woodbury's Director of Public Safety Lee Vague aware of the complaints of misconduct and mistreatment because Mr. Vague was copied with Plaintiff Baker's correspondence describing the illegal activities.  The City of Woodbury Assistant City Administrator Angela Gorall was also notified with Plaintiff Baker's complaint.  Yet, the City of

Woodbury's leadership team refused to address Plaintiff's complaints.  The action taken by the City of Woodbury and its agents in the matter was to retaliate against Plaintiff Baker, thus making his continuing employment with the City of Woodbury impossible.  Plaintiff Baker could not continue with his employment with the City of Woodbury after he was threatened with physical harm and later placed on a progressive improvement plan (hereinafter "PIP").

18.  Plaintiff Baker had no performance issues until after he complained about an improper request by a police sergeant for him to administer Ketamine against a citizen on or about September 22, 2019 in the City of Woodbury.  Thereafter, on November 19, 2019 Plaintiff Baker was placed on a PIP.

19.  As a direct result of Plaintiff Baker's reporting of unlawful irregularities in the EMS, he was subjected to discipline.  Defendants, as well as other leadership employees such as Jody Brown, created a hostile environment against Plaintiff Baker by instituting a fictitious PIP against him.  It was clear that the disciplinary measure was to create a situation that would force Plaintiff Baker to quit his job and an environment where no other reasonable employee would report any such wrongdoings in the future.  Defendants' actions caused Plaintiff Baker to resign from his employment with the City of Woodbury.  It caused Plaintiff Baker to alter his career path and try to inoculate Defendants' decision in his life.  Plaintiff Baker was good at his job, but Defendant City of Woodbury, through its leadership employees, interfered with his ability to continue in his employment as a paramedic with the EMS.

6

20. Plaintiff Baker was also retaliated against when he was disciplined by Defendants Klein and Guiton because Plaintiff Baker refused an order to inject an unwilling and undeserving citizen with Ketamine. The City of Woodbury leadership team (Defendants Wallgren, Klein, Guiton, human resources director Jody Brown, Angela Gorall, and Lee Vague), despite their receipt of Plaintiff Baker's complaints of the above-referenced, allowed disciplinary measures to be taken against him.

21. On or about September 22, 2019, Sergeant Ehrenberg along with other police officers pressured Plaintiff Baker to administer Ketamine on a Woodbury citizen. Plaintiff Baker believed than that injecting the citizen with Ketamine would have deviate from the standard of care expected from a reasonable paramedic and that the action would have violated federal, state, and regulatory laws. Though it was not part of his job to lodge a complaint against a police sergeant, Plaintiff Baker reported the matter to the leadership team named above because he was concerned as a citizen. He was also aware of the public outcry against police officers for compelling paramedics to administer sedatives upon unwilling citizens.

22. Sergeant Ehrenberg specifically ordered Plaintiff Baker to "draw up" Ketamine to inject a citizen of the City of Woodbury wrongfully. Plaintiff Baker refused Sergeant Ehrenberg's order and defended his actions with the EMS leadership team and human resources personnel. Plaintiff Baker was also concerned at the time that some of the officers involved, particularly Sergeant Ehrenberg, were not listed on the City of Woodbury's list of paramedics. Sergeant Ehrenberg told

Plaintiff Baker at the scene that as a sergeant he was not functioning as a paramedic.  Hence, Sergeant Ehrenberg should not have ordered Plaintiff Baker to administer Ketamine on Plaintiff Baker's patient because Sergeant Ehrenberg was functioning as a police sergeant and not a paramedic.

23.   Prior to the Ketamine incident on September 2019, Plaintiff Baker had discovered and reported to his leadership team, the State of Minnesota EMS medical director and Executive Chairman of the State's EMS regulatory board that paramedic providers employed by the City of Woodbury did not attend continuing education training as submitted.  Consequently, the leadership team collectively took reprisal actions against Plaintiff Baker by placing him in a PIP.

24.   In the City of Woodbury, police, fire and emergency medical services staff work and train together.  The practice started in 1995 when police officers began training as paramedics.  As such, many City of Woodbury police officers are supposedly trained as paramedics.

25.   However, some paramedic recertifications and continuing education trainings benefit from "magic pen" practices.  Plaintiff Baker's reporting of paramedic (police and fire) training attendance errors to the leadership team between March 2019 through November 2019 caused the leadership team's implementation of disciplinary measures against him.

26.   Defendant City of Woodbury's police officers and firefighters serve in dual roles as police officer/paramedic, firefighter/paramedic, or firefighter/emergency medical technician (hereinafter "EMT").  The symbiotic relationship between

police and paramedics gave police officers the effrontery to order paramedics to sedate citizens.

27. The EMS leadership creates situations that leave City of Woodbury citizens without EMS services and public safety vulnerabilities.  Plaintiff Baker's complaint about public safety risks contributed to his reprimand.  In the summer of 2019, Plaintiff Baker received an emergency call of gunshots fired involving a Woodbury police officer.  Plaintiff Baker and another ambulance crew responded to the scene and ultimately combined their crew efforts to save the life of a critically wounded citizen.

28. While Plaintiff Baker was decompressing the chest of the gunshot victim on their way to the hospital, Defendant Wallgren who was at his home and unperturbed by the critical situation, interrupted Plaintiff Baker's lifesaving measures by screaming at him as he was performing the life-saving measures.  Defendant Wallgren was furious that two ambulance crews responded to the shooting incident.  Without Plaintiff Baker's aggressive actions, the citizen would have died.  Plaintiff complained about Defendant Wallgren's reckless public safety action to his chain of command, Defendant Klein.  It was the policy of the City of Woodbury EMS for employees to report incidences to their chain of command, irrespective of the situation.  Reporting incidents outside the chain of command would result in an employee being subjected to disciplinary measures.  Therefore, Plaintiff Baker could not have reported the matter outside his chain of command.

29. Nonetheless, Plaintiff Baker's complaint as described above, contributed to Defendants Wallgren, Klein and Guiton taking retaliatory actions against Plaintiff Baker such as disciplining him. Defendant Wallgren was aware of Defendant Klein's actions as well as other EMS employees' misconduct referred above, but he did not venture to intercede on Plaintiff Baker's behalf.

30. During the same Summer period in 2019, Plaintiff Baker responded to a very serious car accident involving a woman trapped upside down in her damaged vehicle. Plaintiff Baker created a path through one of the car doors to extract the woman from her damaged vehicle. Since there were no firefighters scheduled on any fire-rescue apparatus that day, rescue personnel needed to be called from home to assist. However, Defendant Wallgren instructed firefighters when they arrived on scene to break one of the car windows and ordered that Plaintiff Baker extract the woman and lead her through broken glass created by the newly broken window. Plaintiff Baker refused the command because the women would have been severely injured beyond the injuries she had sustained from the accident. Again, Plaintiff refusal to risk the life of a citizen and insistence on providing adequate critical medical care contributed to his placement on a PIP. Plaintiff reported the matter to his chain of command. Individual defendants above-named were aware of Plaintiff Baker's complaint. As a citizen, Plaintiff Baker believed that Defendant Wallgren's recommendation placed another citizen in grave danger. Plaintiff Baker reported his objection to Defendant Klien and Guiton. But, Plaintiff Baker was viewed as not "willing to play ball," even if it involved

risking the life of a citizen.  Plaintiff Baker's actions herein contributed to his placement on a PIP.

31.     The City of Woodbury EMS leadership does not object to improper orders even when the orders are inhumane.  On one occasion after a house fire in the City of Woodbury, a firefighter spoke to Plaintiff Baker regarding a body which was recovered and removed from a burning building by firefighters.  Without allowing the firefighters to complete their work, they were ordered to return the body to the house fire by a police officer on the scene.  The EMS leadership team (Defendants Wallgren, Klein and Guiton) knew that Plaintiff Baker objected to the conduct. He requested a meeting of firefighters and paramedics who had experienced such critical incidents.  His complaint to the leadership contributed to his falling out of grace with them.  None of the leadership team members were willing to entertain Plaintiff Baker's complaint about the inhumane treatment of citizens, including paramedics.

32.     The symbiotic relationship between EMS and police officers has created room for police officers to coerce paramedics like Plaintiff Baker to administer Ketamine on unwilling subjects.  During the majority of Plaintiff Baker's employment with the City of Woodbury, his EMS supervisors and peers considered his job performance satisfactory.  Indeed, his July 2019 performance evaluation remarked that Plaintiff Baker's job performance was "fully successful," and he received a raise in pay.  As a result, he was encouraged to pursue further leadership opportunities in field training and education with the EMS.

33.  Despite Plaintiff Baker's successful performance evaluation in July 2019,

Defendants Chis Klein, JB Guiton, Chief Wallgren and human resources manager

Jody Brown's view of Plaintiff Baker had begone to change in March 2019

through May 2019.  The reason for the change was because Plaintiff Baker in

March 2019 discovered errors and misrepresentations of paramedic employees'

training records.

34.  In March 2019, many paramedic providers, including police officers, were poised

to be decertified because of failing to attend their requisite EMS trainings.

Plaintiff Baker contacted Defendants Guiton, Klein and Chief Wallgren about the

problem but they again refused to address the training deficiencies.

35.  Plaintiff Baker continued to internally raise concerns about the seriousness of the

matter with his leadership, including the possibility that errors could violate

federal, state, regulatory and/or ethical laws.  He warned Defendants Guiton, Klein

and Wallgren about the errors and the approaching decertification of police

officers and other paramedic providers' licenses.  Instead of finding ways to

properly address the problem, Defendant Guiton asked Plaintiff Baker to "take

care" of the police paramedic refresher training.  Plaintiff Baker understood that to

mean falsifying recertification records and provide fraudulent education.  Plaintiff

Baker refused because it would be a gross violation of the law, including

Minnesota Statute 144.305, 144E.27, subdivision 5, or 144E.28, subdivision 5.

36.  Defendant Guiton was unrelenting in his demand that Plaintiff Baker either falsify

the records or ignore them.  Plaintiff Baker refused.  Again, Defendant Guiton

asked Plaintiff Baker and Lauren Trembley to teach the paramedic refresher classes to police paramedic employees, even though he knew that the City of Woodbury's EMS did not have the required accreditation to provide the trainings.

37. Plaintiff Baker was mindful about the manner of his complaints. He made sure that he did not complain unprofessionally and create workplace disharmony or imped he or others' job performances. He primarily discussed his concerns on a "need to know basis." He did not want to impair his working relationships with other officers. Plaintiff Baker was interested in a smooth working relationship with his peers and bosses. However, as a citizen, Plaintiff Baker was frustrated and feared the decertification of the City of Woodbury paramedic providers' EMS licenses *en masse.* Thereafter, Plaintiff Baker, as well as Lauren Trembley, jointly wrote to Dr. Aaron Burnett. Plaintiff Baker notified his superiors about their letter to Dr. Burnett. Dr. Burnett is the medical director and an executive chair member of the State's EMS regulatory board. Dr. Burnett is also a physician at Regions Hospital and the medical director for the City of Woodbury's EMS. In the letter, Plaintiff Baker informed Dr. Burnett about the irregularities and asked for his assistance in addressing the problem.

38. Instead of taking immediate corrective actions, Dr. Burnett notified Plaintiff Baker's superiors such as Defendants Guiton and Klein about Plaintiff Baker's complaint. Defendant Guiton was angry with Plaintiff Baker because he reported the irregularities to Dr. Burnett instead of ignoring them, his chain of command.

39.    By reporting the irregularities with training records to Dr. Burnett, Plaintiff Baker
       believed that he had complied with his obligation as a paramedic and as an
       employee of the City of Woodbury.  Primarily, he believed that as a citizen who
       had been trained as a military police officer before his employment with the City
       of Woodbury, he was obligated to report wrongdoings that could impact public
       safety and are unlawful.

40.    Plaintiff Baker continued to uncover more irregularities and reported them to
       Defendants Klein, Guiton and Chief Wallgren.  During a May 2019 meeting after
       Plaintiff Baker had asked Regions Hospital's EMS education group about
       providing paramedic refresher course to the City of Woodbury EMS employees
       with training deficiencies, Defendant Guiton's anger toward Plaintiff Baker was
       palpable.

41.    Defendant Guiton with cliched teeth said the following to Plaintiff Baker:
       "You're lucky I couldn't get my hands around your throat on Thursday."  Plaintiff
       was shocked and afraid for his safety and his job.  The City of Woodbury human
       resources as well as the EMS leadership were aware of the event but took no
       corrective action.  Instead, the entire team above-referenced blamed Plaintiff
       Baker for contacting Dr. Burnett.

42.    The City of Woodbury allowed the custom of stifling any form of reporting
       wrongdoings by employees at the EMS, no matter the context.  Plaintiff Baker's
       mistreatment at the hands of Defendant Guiton and the rest of the leadership team

was a warning to other employees about consequences for reporting wrongdoings, even if the employee was a mandatory reporter or a concerned citizen.

43.     As a result of Plaintiff Baker's refusal to ignore paramedic training irregularities, some officers' EMS licenses were at risk of not being recertified or face potential audits and leading to decertification.  Defendant Guiton and Klein's anger toward Plaintiff Baker were evident.

44.      Plaintiff Baker's superiors' such as Defendants Guiton, Klein and Chief Wallgren were furious with Plaintiff Baker.  Thereafter, they began to devise more plans to intimidate him.  Though Plaintiff Baker knew that Defendants would eventually create a work environment that would be unbearable, he continued to uncover even more training infractions.

45.     For example, the National Registry of Emergency Medical Technicians (hereinafter "NREMT") provides national EMS certifications.  Plaintiff notified Defendants Klein, Guiton and Wallgren that the NREMT training records for Woodbury officers showed certain officers, paramedics and firefighters received credit for live training which they did not complete.

46.     Plaintiff notified Defendants Klein, Guiton, and Wallgren but they preferred that Plaintiff Baker would ignore his discoveries.  Plaintiff refused. However, Plaintiff Baker did not notify Dr. Burnett again because his earlier notification was sufficient.  Besides, Plaintiff Baker was still fearful of Defendant Guiton because of his threat to harm Plaintiff Baker.  Seeing that City of Woodbury had expressed

its custom of condoning physical threats against employees like Plaintiff Baker, he was leery about communicating with anyone outside his chain of command.

47. Plaintiff Baker also raised another concern to his commanders—that back in December 2018, the paramedic training roster showed individuals who completed neither the Target Solutions training nor the Continuing Medication Education for paramedics ("CME") yet they received credit for both courses on NREMT.

48. Plaintiff Baker reported the discovery to Defendants Klein, Guiton and Wallgren, that the NREMT education course titled "Paramedic Refresher for Command" showed that a course was provided by the City of Woodbury EMS education Lead Officer Kevin Asauskas; however, when Plaintiff Baker spoke with Mr. Asauskas about the course, Mr. Asauskas told Plaintiff Baker that he did not teach the course. It was a shocking revelation to Plaintiff Baker. Again, Plaintiff Baker reported this matter to his chain of command. Instead of responding appropriately, his chain of command ostracized and ultimately disciplined him.

49. Plaintiff Baker was noticing the public safety impact of officers not receiving continuing paramedic recertification training. The fact that certain officers would refuse to attend paramedic refresher courses, yet seek CME credits explains how officers would coerce paramedics to engaged in unlawful and unethical medical practices such as sedating unwilling and undeserving citizens with Ketamine.

50. On or about September 22, 2019 when Plaintiff Baker refused Sergeant Ehrenberg's order that Plaintiff Baker administer Ketamine on a City of Woodbury resident, Defendants Klein, Guiton, Chief Wallgren and human

resources manager Jody Brown put their intimidation plan into overdrive and placed Plaintiff Baker on a PIP.

51.   Less than two months after Plaintiff Baker complained about the Ketamine incident on or about September 22, 2019, Defendant Klein wrote to Jody Brown and Defendant Wallgren the following:  "As we chatted, I just want to make sure that my response to placing Joe on PIP would reflect as him being a 'whistleblower' for the EMS education matter."  In writing to Jody Brown, Defendant Klein confirmed that the training issue "seems to be a persistent issue that [Joe] is focused on."  In that letter, Defendant Klein confirmed that they would meet with Plaintiff Baker on November 19, 2019 but he wanted the issue of Plaintiff Baker's "whistleblower" status assured by Jody Brown.

52.   The fact that no actions were taken against Lauren Trembley shows that Defendants particularized that their efforts against Plaintiff Baker.  His reporting of the officer's order that he use Ketamine improperly was the ultimate catalyst for his placement on PIP.

53.   Plaintiff Baker was invited to a November 19, 2019 meeting with the guise of addressing all his concerns about irregularities in the EMS.  Instead, the meeting was a ploy to intimidate and discipline Plaintiff Baker.  Jody Brown was aware of Plaintiff Baker's complaints, yet she conspired with Defendants Guiton, Klein and Wallgren to place Plaintiff Baker on the PIP.

54.   Plaintiff Baker was surprised that for many months, the City of Woodbury and its employees above-named did not show serious interest to resolve his concerns,

even when he was physically threatened by Defendant Guiton.  As a citizen,

Plaintiff Baker was genuinely worried for the citizens of Woodbury's safety; he

insisted on a meeting with the leadership team, Defendant Wallgren, Klein and

Guiton.

55.     Though checking the accuracy of paramedics training reporting was not part of his

job duties, Plaintiff Baker discovered the irregularities by happenstance.  As a

member of the City of Woodbury EMS education group, a meeting with the

leadership team regarding his complaint was appropriate.  When the team agreed

to meet with him on November 19, 2019, he was hopeful that his concerns would

be addressed because he loved the City of Woodbury.  He wanted to finish his

career with the City of Woodbury EMS.  But, Defendants above-named and the

rest of the leadership team planned to discipline and intimidate him for

complaining.  They negatively altered his career.

56.     During the meeting on November 19, 2019, Defendant Guiton admitted to

Plaintiff Baker that the training records were indeed erroneous.  Defendant Klein

also admitted that Plaintiff Baker was placed on the PIP for refusing to inject a

citizen with Ketamine on the orders of Sergeant Ehrenberg.  The leadership team

ignored the fact that Plaintiff Baker's July 2019 performance evaluation was

satisfactory, and that his job performance had been adequate.

57.     At the November 19, 2019 meeting, Plaintiff Baker was ordered by Defendant

Klein and Guiton to sign a document that would have placed his PIP into the

public domain.  To Plaintiff Baker, agreeing to place erroneous information about

him in the public domain was career ending as a paramedic. His aspiration of earning a leadership role in an EMS department would be impossible. Shocked and afraid, Plaintiff Baker requested the presence of a human resources personnel. His request was denied. He was told that human resources would only attend the meeting to fire him. Plaintiff Baker knew then that Defendants' plan was to chill any attempt by him or any other employee to report irregularities. Defendants' strategy was obvious. The PIP was to force Plaintiff Baker to quit his job.

58. Though the meeting was slated to address concerns about training records as well as Plaintiff's refusal to administer Ketamine, he was never given the chance to discuss the fraudulent acts in the EMS. Instead, the plan between Defendants Klein, Guiton, Wallgren and human resources Jody Brown as well as Angela Gorall and Lee Vague was to intimidate and discipline Plaintiff Baker for complaining. At that juncture, the City of Woodbury allowed the custom of abuse of employees like him to continue unfettered.

59. Defendant Wallgren, Defendant Klein, Defendant Guiton, DeAngela Gorall and Lee Vague's authority as it related to Plaintiff Baker and the EMS was not questioned by anyone in the City of Woodbury. Defendant Wallgren, Defendant Klein, Defendant Guiton, DeAngela Gorall and Lee Vague possessed the final authority as it related to the City of Woodbury's treatment of EMS employees, including Plaintiff Baker. The City of Woodbury, through DeAngela Gorall and Lee Vague, were aware of the events. They refused to act and instead allowed the custom of intimidation against Plaintiff Baker to manifest.

60.     Plaintiff Baker was very frightened that his employment would soon be ended
        unlawfully, just as another employee whose employment ended shortly after she
        was placed on a PIP.  Plaintiff Baker was concerned that the City of Woodbury
        and the EMS leadership were determined to harm him professionally because they
        ignored the following:  repeated complaints about police officers and leadership
        teams' violation of the law; erroneous training records at the EMS; Defendants
        Wallgren, Klein and Guiton encouraging unlawful acts relating to training records;
        the City of Woodbury ignoring its obligation pursuant Minnesota Statute 144E.30
        by failing to report wrongdoings; allowed police officers to order paramedics to
        sedate citizens with Ketamine; intimidate a whistleblower with threat of violence;
        and placing a mandatory reporter on PIP for acting consistent with Minnesota law,
        including Minnesota Statute 144E.30.

61.     The City of Woodbury and its leadership team ought to have known that around
        the country, officers have been imprisoned for falsifying training records.  The
        inaccuracies reported by Plaintiff Bakers were serious illegal matters.  The
        forceful administration of sedatives like Ketamine on people at the order of police
        officers are equally serious medical and public safety issues.  Yet, Defendant City
        of Woodbury took no actions against the officers involved.  The City of
        Woodbury's custom of allowing the above-mentioned unlawful conduct was not in
        dispute.  As a city, its acquiescence delegated its final authority upon Defendants
        Wallgren, Klein and Guiton.

62.     Plaintiff Baker's employment with Defendant City of Woodbury was turned into a

horrifying experience by the City of Woodbury and its employees.  Saving his job

by violating his conscience and/or reporting obligation was not an option for

Plaintiff Baker.  He was also unwilling to ignore the public safety risks that the

EMS placed citizens of the City of Woodbury.  Being that the City of Woodbury

would not protect him from physical harm at the hands of Defendant Guiton as

well as placing him on a PIP, Plaintiff Baker was forced to resign his employment

with the City of Woodbury at a significant professional, financial and emotional

loss.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983, First Amendment Retaliation**
*Plaintiff vs. Defendants Wallgren, Klein and Guiton*

63.     Plaintiff Baker incorporates the above paragraphs as though fully set forth below.

64.     By the actions described above, Defendants Wallgren, Klein and Guiton under

color of law violated and deprived Plaintiff Baker of his clearly established and

well-settled First Amendment rights under the United States Constitution.

65.     As a paramedic with the City of Woodbury, Plaintiff Baker was a member of the

education group and discovered irregularities.  As a citizen, Plaintiff Baker

believed that the irregularities were unlawful and placed citizens of the City of

Woodbury in grave danger.  As a concerned citizen, he reported the irregularities

with EMS training records and improper administration of Ketamine both

internally and externally.  Plaintiff Baker believed that his speech by way of his

many complaints regarding the above-refenced matters were protected speech.

21

66.    Plaintiff Baker also discovered that Defendant City of Woodbury employees'
       EMS training records were falsified.  As a concerned citizen, Plaintiff Baker
       reported the discovery to his commanders as well as the director of the State of
       Minnesota EMS licensing board, pursuant to Minnesota Statute 144E.30.  Instead
       of commending him, reprisal actions were taken against him.  Defendant Klein
       admitted to Plaintiff Baker that he was placed on a PIP because he reported errors
       with the City of Woodbury employees' EMS training to the executive chairman of
       the State EMS licensing board and the City of Woodbury EMS medical director.

67.    Plaintiff Baker refused to improperly administer Ketamine on a City of Woodbury
       citizen at the order of Sergeant Ehrenberg.  Plaintiff Baker communicated his
       objections to Sergeant Ehrenberg that he would not sedate a patient that he did not
       properly evaluate.  Plaintiff Baker also defended his refusal to honor the unethical
       request of the EMS leadership.  He objected to the callous request for the
       administration of Ketamine at the urging of a police sergeant and other police
       officers on the scene on September 22, 2019.

68.    As a citizen, Plaintiff Baker was aware that the administration of Ketamine at the
       request of police officers have fueled lawsuits and public outcry in Minnesota and
       around the country.

69.    Shortly after communicating his objections to the City of Woodbury public safety
       leadership team, Defendants Wallgren, Klein, and Guiton, Plaintiff Baker was
       disciplined and placed on PIP.

70.   Defendant City of Woodbury, through its human resources department, was aware of Plaintiff Baker's complaints of unlawful conduct by EMS employees as well as threats by Defendant Guiton, yet it allowed the disciplinary measures against him. The leadership team and the human resources department ignored Defendant Guiton's physical threat against Plaintiff Baker.  Instead, Defendants responded by disciplining Plaintiff Baker.  Defendant City of Woodbury employees' conduct was intended to chill any person, including Plaintiff Baker, from ever complaining of wrongdoings at the City of Woodbury.

71.   Defendants Wallgren, Klein and Guiton disciplinary measures against Plaintiff Baker were motivated by Plaintiff Baker's engagement in protected speech and in violation of Plaintiff Baker's First Amendment rights under the United States Constitution.

72.   Defendants Wallgren, Klein and Guiton subjected Plaintiff Baker to the deprivations of his rights in such a manner so as to render Defendants Wallgren, Klein and Guiton liable for punitive damages.  Defendants Wallgren, Klein and Guiton actions placed Plaintiff Baker and the City of Woodbury citizens in great peril.

73.   As a result of Defendants Wallgren, Klein and Guiton's actions, Plaintiff Baker continues to suffer damages, including but not limited to emotional distress.

74.   Punitive damages available against Defendants Wallgren, Klein and Guiton are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S.

30 (1983) and as such, are not subject to the pleading requirements or the differing

standard of proof set forth in Minn. Stat. Ann. §549.20.

75.   Wherefore, Plaintiff Baker seeks relief as set forth below.

## SECOND CAUSE OF ACTION
### 42 U.S.C. §1983, Violation of Civil Rights
### *Monell* claim against the City of Woodbury
### *Monell v. Department of Social Services*, 436 U.S. 658 (1978)
### *Plaintiff v. City of Woodbury*

76.   Plaintiff Baker incorporate by reference all allegations set forth in the paragraphs

above as if fully set below.

77.   Defendant City of Woodbury had a duty to adequately train, supervise and

discipline its employees, including its leadership team above-referenced in order

to protect members of the public, including employees such as Plaintiff Baker

from being harmed unnecessarily by Defendant Wallgren, Defendant Klein,

Defendant Guiton, Jody Brown, DeAngela Gorall and Lee Vague.

78.   Defendant City of Woodbury had the duty to uphold the law and not to ignore

officers who submitted fraudulent training records.  Defendant City of Woodbury

owed a duty to Plaintiff Baker and not to ignore Plaintiff Baker's complaint of

threats to his safety when Defendant Guiton threatened him with physical harm.

79.   Defendant City of Woodbury owed a duty to train its officers not to direct

paramedics to sedate citizens unnecessarily, if not prevent them from doing so

outright.  Defendant City of Woodbury owed a duty to train it employees against

taking reprisal actions against employees who exercise their constitutional rights

as well as their mandatory obligation under Minnesota law to complain about wrongdoings in the City of Woodbury.

80. Defendant City of Woodbury owed a duty to adequately train, supervise and discipline its employees such as Defendant Wallgren, Defendant Klein, Defendant Guiton, Jody Brown, DeAngela Gorall and Lee Vague in order to protect members of the public, including employees like Plaintiff Baker, from being harmed.

81. Defendant City of Woodbury and Defendant Wallgren, Defendant Klein, Defendant Guiton, Jody Brown, DeAngela Gorall and Lee Vague were deliberately indifferent to such duties and thereby proximately caused Plaintiff Baker to resign from his job and caused injury to him as complained herein.

82. Defendant City of Woodbury refusal to correct its leadership employees above-referenced created a custom and practice of ignoring the rights of employees like Plaintiff Baker.

83. Defendant City of Woodbury ratified and approved Defendant Wallgren, Defendant Klein, Defendant Guiton, Jody Brown, DeAngela Gorall and Lee Vague's actions when it failed to discipline or correct Defendants Wallgren, Klien, and Guiton.  It therein approved a deficient policy, custom, or practice of allowing unlawful conduct above-referenced.

84. The violation of Plaintiff Baker's constitutional rights and forcing him to resign was directly and proximately caused by the aforementioned acts of Defendants and the City of Woodbury's customs, patterns, and/or practice. Defendant City of

Woodbury is therefore liable to Plaintiff Baker.  Wherefore, Plaintiff Baker seeks relief as set forth below.

<u>**THIRD CAUSE OF ACTION**</u>
**Minn. Stat. §181.932, Minnesota Whistleblower Act**
***Plaintiff vs. Defendant City of Woodbury***

85.  Plaintiff Baker incorporates the above paragraphs as though fully set forth below.

86.  By the actions described above, Defendant City of Woodbury under color of state law violated and deprived Plaintiff Baker his clearly established and well-settled protections and obligations under Minn. Stat. §181.932, Minn. Stat. §144E.30, Minn. Stat. §144E.27 (5) and Minn. Stat. 144E.28(5).

87.  Through the actions of Defendants Wallgren, Klein, Guiton, human resources director Jody Brown and other EMS employees, the City of Woodbury disciplined, threatened and caused the resignation of Plaintiff Baker from his employment with the City of Woodbury.

88.  Plaintiff Baker believed that it is a violation of state laws to falsify EMS training records.  He also believed that it is improper provision of emergency medical care to sedate an unwilling citizen at the behest of a police sergeant.

89.  The City of Woodbury through Defendants Wallgren, Kline, and Guiton supervised Plaintiff Baker.  When he discovered irregularities with the EMS training records, Defendant Guiton suggested that Plaintiff Baker falsify the records.

90. Plaintiff Baker believed that falsification of training records would violate state laws as expressed by Minn. Stat. §144E.30, Minn. Stat. §144E.27 (5) and Minn. Stat. 144E.28(5).

91. Plaintiff Baker notified Defendants above-named, including human resources Jody Brown and the State of Minnesota EMS regulatory board through Dr. Burnett.

92. Furthermore, Plaintiff Baker in good faith refused Sergeant Ehrenberg's order that Plaintiff Baker improperly administer Ketamine on an unwilling citizen and reported it to Defendants Klein, Guiton, Wallgren, Jody Brown and Jean Schowalter because Sergeant Ehrenberg's actions affected the quality of health care services provided by the City of Woodbury EMS.

93. The unlawful and unwilling administration of Ketamine on a person violates the professional standard established for paramedics to follow. Sergeant Ehrenberg's conduct along with the City of Woodbury's EMS leadership team acceptance of the practice placed the citizens of Woodbury at risk of harm.

94. Plaintiff Baker communicated the above-referenced concerns to Defendant City of Woodbury leadership team, the City of Woodbury human resources personnel and the State of Minnesota EMS regulatory board through Dr. Burnett because the allegations are true and accurate.

95. As a result of Plaintiff Baker's reporting his objections and discoveries, Defendant City of Woodbury through its employees took reprisal actions against him by intimidating him, threating him with bodily harm and placing him on PIP and causing him to resign from his employment with the City of Woodbury.

96.     Defendant City of Woodbury and its employees actions violated the State of

        Minnesota Whistleblower Act, Minn. Stat. §181.932.

97.     Because of Defendant City of Woodbury's actions, Plaintiff continue to suffer

        damages including but not limited to emotional distress and income loss.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Baker prays for judgment against Defendants as follows:

A.      As to the first count, money judgment against Defendants Wallgren, Klein and

        Guiton each for compensatory damages in an amount in excess of Seventy Five

        Thousand ($75,000) dollars and punitive damages in an amount in excess of Five

        Hundred Thousand ($500,000) dollars against each individual defendant and

        together with costs, including reasonable attorney's fees, under 42 U.S.C. §1988

        and prejudgment interest;

B.      As to the second count, money judgment against Defendant City of Woodbury for

        compensatory damages in an amount to be determined and together with costs,

        including reasonable attorneys' fees under 42 U.S.C. §1988; order the City of

        Woodbury to end the practice of coercing paramedics to sedate unwilling citizens;

        and appoint a special master to monitor the paramedics' training regime and

        roster;

98.     As to the third count, money judgment against Defendant City of Woodbury for

        compensatory damages in an amount to be determined and together with costs,

        including reasonable attorneys' fees, prejudgment interests pursuant to Minn. Stat.

§ 181.935(a); expungement of any adverse records in Plaintiff Baker's personnel file pursuant to Minn. Stat. § 181.935(c); punitive damages are appropriate if this Court finds clear and convincing evidence that Defendant City of Woodbury deliberately disregarded Plaintiff Baker's rights pursuant to Minn. Stat. §§ 549.191, 549.20; *see Morrow v. Air Methods, Inc.*, 884 F. Supp. 1353, 1357 (D. Minn. 1995) (holding the Whistleblower Act does not foreclose punitive damages).  Plaintiff will seek to amend this third count to seek punitive damages, if formal notice is required by this Court.

C.      An Order that the City of Woodbury police officers end the practice of coercing paramedics to sedate unwilling citizens; and

D.      For such other and further relief as this Court may deem equitable and just.


**KENNETH UBONG UDOIBOK, P.A.**


August 16, 2020                              */s/ Kenneth U. Udoibok*
                                            Kenneth U. Udoibok #0262523
                                            Flour Exchange Building
                                            310 Fourth Avenue South, Suite 5010
                                            Minneapolis, MN 55415
                                            612-808-6031 (v)
                                            K@Kenulaw.com

**ATTORNEY FOR PLAINTIFF**